UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| RAMONA SPENCER,<br><br>    Plaintiff,<br><br>V.<br><br>ALIEF INDEPENDENT<br>SCHOOL DISTRICT<br><br>    Defendant. | §<br>§<br>§<br>§<br>§<br>§<br>§    Civ. No. 4:11-cv-02105<br>§<br>§<br>§<br>§<br>§ |

# MEMORANDUM AND ORDER

Before the Court is Defendant's Motion for Summary Judgment and Brief in Support ("Motion"). (Doc. No. 50.) After considering the Motion, all responses and replies, and the applicable law, the Court concludes that the Motion should be **GRANTED.**

## I. BACKGROUND

Plaintiff Ramona Spencer ("Plaintiff" or "Spencer"), a forty-year-old African-American woman, has been employed with Alief Independent School District ("the District" or "Defendant") since 1997. Specifically, within the District, Plaintiff has occupied the position of Assistant Principal at Alief Middle School, Olle Middle School, Alief Alternative School (later renamed Alief Learning Center), Taylor High School, Albright Middle School, and Killough Middle School (Ramona Spencer Dep. 50:7-16, 52:2-19, 54:13-24, 55:7-21, 56:9-13; 57:19-24; 58:4-21, Sept 7, 2012.) The transfers made from each institution were generally made at Plaintiff's request in order to get a little more experience, so as to prepare

herself for a promotion (Spencer Dep. 55:16-18; 56:25, 57:1-16; 57:19-24; 59:3-16; 62:12-15.) Spencer currently remains employed as an assistant principal at Killough Middle School.

At the time of filing her lawsuit alleging discrimination, Plaintiff had been in the field of education for twenty-five years. Plaintiff filed a lawsuit complaining of disparate treatment because of her age, sex and race. Furthermore, Plaintiff alleged that the District has a discriminatory policy of not posting jobs for promotions.

Plaintiff states that she has applied for, and been denied, multiple positions during her tenure with the District: Assistant Director of Athletics in 2004, Principal of the Alternative School in 2004, Assistant Principal at Kerr High School in 2009, Summer School Assistant Principal Position in 2010, and Principal position at Alief Learning Center (Alternative School) in 2010.

On February 27, 2012 and June 7, 2012, the Court entered Orders dismissing the majority of Spencer's claims. (Doc. No. 26 and 43.) The only remaining issues before the Court are whether the District violated Title VII by discriminating against Spencer on the basis of race when it selected other candidates for the following two positions: (1) the Summer School High School Assistant Principal ("Summer School") position selected in February 2010, and (2) the Alief Learning Center ("ALC") Principal position selected in August 2010.

## II. LEGAL STANDARD

Summary judgment is warranted where a party establishes that there is no genuine dispute about any material fact and the law entitles the party to judgment. Fed. R. Civ. P. 56(c); *Celotex v. Catrett*, 477 U.S. 317, 322-23 (1986). The party seeking summary judgment bears the burden of demonstrating that there is no actual dispute as to any material fact of the

case. Fed. R. Civ. P. 56(a), *Willis v. Roche Biomed. Lab.,* 61 F.3d 313, 315 (5th Cir. 1995) (citing *Celotex*, 477 U.S. at 322).

Furthermore, the summary judgment standard "provides that the mere existence of *some* factual dispute will not defeat a motion for summary judgment; Rule 56 requires that the fact dispute be *genuine* and *material*." *Willis*, 61 F.3d at 315. First, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law are material." *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Second, a dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* (citing *Anderson*, 477 U.S. at 248). While all justifiable inferences should be drawn in the nonmovant's favor, conclusory affidavits will not suffice to create or negate a genuine issue of fact. *Anderson,* 477 U.S. at 255; *Reese v. Anderson*, 926 F.2d 494, 498 (5th Cir. 1991); *Shaffer v. Williams,* 794 F.2d 1030, 1033 (5th Circ. 1986).

### III. ANALYSIS

Since Spencer's lawsuit does not allege direct evidence of race discrimination, her claim is analyzed under the *McDonnell-Douglas* burden-shifting framework. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under this framework, Spencer must first establish a prima facie case of race discrimination. *Jackson v. Watkins*, 619 F.3d 463, 466 (5th Cir. 2010); *Burrell v. Dr. Pepper/Seven Up Bottling Group, Inc*., 482 F.3d 408, 411 (5th Cir. 2007). In a failure to promote claim, Spencer must show that: (1) she belongs to a protected class; (2) she applied for and was qualified for a position for which applicants were being sought; (3) she was rejected; and (4) a person outside of her protected class was hired for the position. *Medina v. Ramsey Steel Co., Inc*., 238 F.3d 674, 680-81 (5th Cir.2001). In this case, Defendant does not dispute that Spencer can establish a *prima facie* case.

Defendant admits that Spencer met the minimum qualifications for the two positions at issue.

The District hired seven assistant principals for the Summer School program that took place at the District's four high schools in 2010. Although two African-American administrators where hired for the Summer School position, the other five positions were filled with non-African-American Administrators (two Hispanics, one Asian-American, and two Caucasians). For the ALC position, seven individuals were interviewed for one position. The candidate selected for the ALC principal position was Caucasian. (Doc. No. 50, Exh. A at ¶ 12.) Based on the candidates selected for the two positions, Plaintiff and Defendant agree that Spencer has demonstrated a prima facie case of discrimination. Thus, the Court proceeds to the second part of the analysis.

Once a prima facie case is established, the burden of production shifts to the District to articulate a legitimate, nondiscriminatory reason for its actions. *Jackson,* 619 F.3d at 466, *Burrell*, 482 F.3d at 412. As this burden is one of production, not persuasion, "the employer need not prove that it was actually motivated by its proffered reason." *Patrick v. Ridge,* 394 F.3d 311, 315 (5th Cir.2004). Yet, if the employer meets its burden, "the presumption of discrimination created by the plaintiff's prima facie case falls away." *Id.* The Court finds that there are legitimate, nondiscriminatory reasons that Spencer did not receive the Summer School position or the ALC principal position.

**A. Summer School Position**

First, Spencer argues that she should have received the Summer School position, because she had more years of experience at the District than the Asian-American candidate who was chosen. In particular, Mao-Ju "Catherine" Lee was selected for one of the two Elsik Summer School positions. Lee had come to the District in 2001 as an ESL teacher and

worked in that position for five years, served as ESL Department Chair from 2006-09, and then became an Assistant Principal in 2009. (Catherine Lee Dep. 6:2-7:14, September 4, 2012.) At the time she was assigned to the Summer School position, Lee had less than one year of experience as an Assistant Principal. Spencer does not challenge the selection of Raymond Hatton (African-American) for the second position at Elsik's summer program.

Elsik High School consists of two campuses—the Elsik main campus and the Elsik Ninth Grade Center. Elsik's 2010 Summer School program was held at the Ninth Grade Center. (Doc. No. 50, Exh. A at ¶ 8, Exh. B. at ¶ 4.) Lee was serving as an Assistant Principal at the Elsik Ninth Grade Center at the time when she was interviewed for the position. Hilda Rodriguez (Hispanic), the coordinating principal at Elsik High School, selected Lee for the Summer School position because, as the current Assistant Principal at the Ninth Grade Center, she knew the students and families who would be participating in the summer program from the campus. (Doc. No. 50, Exh. A at ¶ 10, Exh. B. at ¶ 5.) Lee also knew the faculty, staff, and facilities at the Ninth Grade Center, and understood the day-to-day operations of the campus where the Elsik summer program would be held. *Id.* Lee also had prior summer school experience, having previously served as an on-site coordinator for the Summer School program at Alief Middle School. (Doc. No. 50, Exh. A at ¶10.)

Rodriguez also selected Hatton who had served as assistant principal on the Elsik main campus and had ten years of administrative experience. (Doc. No. 50, Exh. A at ¶8, Exh. B at ¶ 6-7.) Rodriguez believed that Hatton's experience and knowledge of the students, families, and staff from the Elsik main campus would complement Lee's similar knowledge of the Ninth Grade Center. (Doc. No. 50, Exh. B at ¶ 6-7.) Rodriguez selected Lee and Hatton because she believed they were the best administrative team for the Elsik Summer

School program based on their respective credentials. Even though Plaintiff asserts "Lee had no qualifications/experience in instruction," there is no genuine fact dispute between parties regarding Lee's job qualifications.

The District's claim that Lee's specific experiences made her the best, most-qualified candidate for her respective position is a legitimate, nondiscriminatory reason for choosing her over Spencer. *Manning v. Chevron Chem. Co.,* 332 F.3d 874, 881-82 (5th Cir. 2003). In *Manning,* similar to the facts here, both parties agreed that Manning had demonstrated a prima facie case of discrimination. In the second part of the analysis, the Fifth Circuit found that it was sufficient for the defendant to state it selected the "best qualified" candidate, and found that the defendant did not have to state the specific reason Manning was denied the position. In this case, the District has not only stated that Lee was better qualified than Spencer, but has described why. For example, Lee had experience at the Ninth Grade Center, and had been a Summer School administrator, which distinguished her from Spencer, even if Spencer had more total years of experience.

The District's hiring process also bolsters the contention that Defendant had a legitimate, nondiscriminatory reason for hiring Lee and Hatton over Spencer. Assistant Principal positions were available at each of AISD's four high schools, and AISD Area Superintendent Maggie Cuellar (Hispanic) collected the applications for the positions. (Doc. No. 50, Exh. A at ¶ 3, 5-6; Spencer Dep. 109:22-24.) Twelve District administrators applied for the vacant positions including Spencer. (Doc. No. 50, Exhibit A-2, Exh. A at ¶ 5; Spencer Dep. 60:7-16).  Because the Summer School positions involved the administration of high school campuses, Cuellar and the coordinating principals on each high school campus decided to interview only those candidates currently serving as high school assistant

6

principals. (Doc. No. 50, Exh. A at ¶ 6; *see also* Affidavit of Hilda Rodriguez, Exhibit B at ¶ 4-6, 8.) Accordingly, Spencer and another applicant, Jimmie Smith, were not selected to interview as they were administrators at the middle school level, rather than the high school level. (Doc. No. 50, Exh. A at ¶ 7, 11; *see also* Letters dated February 2, 2010 to Ramona Spencer and Jimmie Smith, Exhibit A-3.) The candidates hired at the various campuses included two African-Americans, two Caucasians, two Hispanics, and one Asian-American. (Doc. No. 50, Exh. A at ¶ 12.)

The District contacted Spencer by email seeking to interview her for the middle school summer school program. (Spencer Dep. 110:1-9; 111:2-25; 112:1-4; *see also* Emails to and from Ramona Spencer, Exhibit F-1.) However, Spencer rejected the interview, stating that she was only interested in working with the high school program because it paid more. *Id.*

The Court finds that the District has provided a legitimate, nondiscriminatory reason for its hiring decision. As the District has sustained its burden, Spencer must establish that the District's proffered reason is merely a pretext for discrimination, or that the District's reason, while true, is only one of the reasons for its conduct, and another motivating factor is the plaintiff's protected characteristic. *See Burrell,* 482 F.3d at 412; *Rachid v. Jack in the Box,* 376 F.3d 305, 312 (5th Cir. 2004). At this point, the court's factual inquiry becomes more specific. *Patrick,* 94 F.3d at 315. To avoid dismissal by summary judgment at this stage, this court has directed that:

> the employee must show that the employer's putative legitimate, nondiscriminatory reason was not its real reason, but was merely a pretext for discrimination. In other words, after a defendant employer has met its burden of production, an employee plaintiff ... must ... demonstrate that there is a material issue of disputed fact as to discrimination.... In some instances, proof of pretext alone will suffice.

7

*Id.* (footnotes omitted). In short, the question for us at the pretext stage is whether a rational trier of fact could find that the District discriminated against Spencer on the basis of race.

Spencer has failed to establish that the reason provided by the District is merely a pretext for discrimination. A plaintiff may demonstrate pretext by proving that the employer's proffered reason is "unworthy of credence," or that she was "clearly better qualified" for the position than the person selected. *Moss v. BMC Software, Inc.*, 610 F.3d 917, 922 (5th Cir. 2010). In order to show that she was clearly better qualified, the plaintiff "must present evidence from which a jury could conclude that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff for the job in question." *Id*. at 923. (internal citations and quotations omitted). "Unless the qualifications are so widely disparate that no reasonable employer would have made the same decision, any differences in qualifications are generally not probative evidence of discrimination." *Id*. Thus, "the bar is set high for this kind of evidence." *Id*.

Spencer may have more years of experience at the District, but this does not show that no reasonable employer could have chosen Lee over her for the Summer School position. The District reasonably found that Lee was better qualified. The Fifth Circuit has articulated that "an attempt to equate years served with superior qualifications is unpersuasive in the context of an employment discrimination claim." *Moss*, 610 F. 3d at 917. "[O]bviously, work experience is one component of defining who is more qualified, but greater experience alone will not suffice to raise a fact question as to whether one person is clearly more qualified than another." *See also Nichols v. Loral Vought Sys. Corp.,* 81 F.3d 38, 42 (5th Cir. 1996) (holding comparative years of experience not sufficient evidence to show Title VII plaintiff substantially better qualified at summary judgment stage); *Amie v. El*

8

*Paso Indep. Sch. Dist.,* 253 Fed. App'x 337, 454 (5th Cir. 2007) (upholding summary judgment for school district despite plaintiff's eight years of head coaching experience and the selected candidate's lack of head coaching experience). Lee had experience at the Elsik Ninth Grade Center, and knew the students and families, distinguishing her from Spencer. Thus, the Court finds that the District's choice of Lee, despite her fewer years of experience, is not pretext for discrimination.

Spencer also argues that the specific positing for the Summer School position did not include previous high school administration experience as a listed criterion, and thus the District improperly used this is criterion to exclude her from an interview. However, employers are not limited to requirements specifically enumerated in a job posting or description, provided the decision is not based upon unlawful criteria. Civil Rights Act of 1964, § 703(a)(1), 42 U.S.C.A. § 2000e–2(a)(1); *Holley v. N. Carolina Dept. of Admin., N.C.*, 846 F. Supp. 2d 416 (E.D.N.C. 2012). Adding the criterion of "current high school administrative experience" does not indicate discriminatory intent. *See Davis v. Dallas Area Rapid Transit*, 383 F.3d 309, 318 (5th Cir. 2004) (rejecting plaintiffs' arguments that change to job qualifications raised a fact issue on racial discrimination and noting that "[w]hile the two candidates ultimately selected to be lieutenants were white, the record shows that there were other African-Americans who met the required qualifications"). In this case, the District hired two of the three African-American candidates interviewed, despite the unlisted criteria.

Furthermore, the criterion of "previous high school administration experience" is not subjective. Subjective criteria may require courts to develop a greater factual record and exercise a greater degree of judgment. *Watson v. Fort Worth Bank & Trust*, 487 U.S. 977 (1988) ("allowing an employer to escape liability simply by articulating vague, inoffensive-

sounding subjective criteria would disserve Title VII's goal of eradicating discrimination in employment.") However, even subjective criteria are not discriminatory per se. *Anderson v. Douglas & Lomason Co., Inc.*, 26 F.3d 1277 (5th Cir. 1994). Here, the District used an objective, albeit unlisted, criterion of previous high school administration to make its decision. Because there is no genuine dispute as to any material fact on this point, and because Spencer cannot show that the District's decision to hire those with previous high school administration experience was pretext for discrimination, the Court finds and holds that awarding summary judgment to the Defendant on this point is appropriate.

**B. ALC Principal Position**

Next, the Court turns to the ALC position. Because both parties agree Spencer has proven a prima facie case of discrimination, the burden shifts to the District, and it must provide a legitimate, nondiscriminatory reason for not selecting Spencer for the ALC position. Spencer applied for the Principal position at ALC in July/August 2010. The District posted this position for the District's alternative placement campus for at-risk students with behavioral and emotional issues. (*See* 2010 ALC Principal Job Posting, Exh. A-4, Spencer Dep. 70:7-16.) AISD established a hiring committee to interview candidates for this position, which consisted of the following AISD administrators: Joyce Eddings, Assistant Superintendent (African-American); Maggie Cuellar, Area Superintendent (Hispanic); Dr. Sue Page, Area Superintendent (African-American); and Sharman Potter, Assistant to Deputy Superintendent of Instruction (Caucasian). (Doc No. 50, Exh. A at ¶ 14.) Spencer and six other candidates—three African-Americans and three Caucasians—interviewed for the position: Mary Wilson (Caucasian), Philip Harrison (African-American), Tara Summers (African-American), Paula Webber (Caucasian), Deirdre Fields (African-American), and

David Newman (Caucasian) (Doc No. 50, Exh. A at ¶ 14.) The committee members asked each candidate an identical set of questions and scored them based on their performance in the interview. Mary Wilson (Caucasian), Philip Harrison (African-American), and Tara Summers (African-American) received the highest scores respectively, with Spencer receiving the lowest score. Mary Wilson was ultimately recommended and chosen for the position. At the time she interviewed, Wilson had just completed her fourth year as an assistant principal at ALC; specifically for the ALC elementary school unit, with additional responsibilities at the intermediate and high school levels. (Doc. No. 50, Exh. A at ¶ 17, Exh. C at ¶ 6.) Wilson also had ten years of administrative experience. (Doc. No. 50, Exh. A at ¶ 17, 18, *see also* Wilson's 2010 Resume, Exhibit A-6.) At the time that Spencer applied, the District found that she had not worked at the ALC in eight years, and had only two years of administrative experience at ALC as opposed to Wilson's four years of recent experience. (Doc. No. 50, Exh. A at ¶ 20, Exh. C at ¶ 6, 10, 13; Spencer Dep. 52:15-25, 53:1-2).

The interview committee recommended Wilson for the ALC position because the members believed her to be the best, most qualified candidate. In her interview, Wilson emphasized the importance of instruction at ALC, rather than solely focusing on behavior management, and expressed a detailed understanding of the programming, assessments, and curriculum at all levels of ALC. (Doc. No. 50, Exh. A at ¶ 18, Exh. C at ¶ 10, Exh. E at ¶ 6-7.) Wilson also came to the interview with substantive ideas for improving ALC. (Doc. No. 50, Exh. A at ¶ 19; Exh. C at ¶ 6, 10, 13, Exh. D at ¶ 6-7, 9-10.) For example, Wilson suggested bringing in the District's professional content coordinators to help the ALC teachers mirror the instruction at the students' home campus. (Doc. No. 50, Exh. D at ¶ 6-7; Exh. D-1 at 221-223, 301-303.) She also suggested developing a resource-sharing

relationship with the home campuses to improve intervention services to the students and stretch ALC's limited operating budget. (Doc. No. 5, Exh. D at ¶ 9-10, Exh. D-1 at 221-223, 301-303.) The committee found her demeanor in the interview to be "dynamic," "passionate," "creative," and showed her to be a "go-getter." (Doc. No. 50, Exh. A at ¶ 19, Exh. C at ¶ 9, Exh. D at ¶ 6-10, Exh. E at ¶ 8.)

In contrast, Spencer received the lowest score of all the candidates who interviewed for the ALC position. Spencer had not worked at ALC in eight years, and the committee members believed that she gave general, "canned" responses to the interview questions. (Doc. No. 50, Exh. A at ¶ 20, Exh. D at ¶ 5, 7-8, Exh. C at ¶ 11-12, Spencer Dep. 52:15-25-53:1-2.) For example, while Wilson described the creative resource-sharing system with the home campuses as a way to better utilize ALC's existing budget, Spencer's solution to ALC's financial restraints was to raise more money. (Doc. No. 50, Exh. D at ¶ 9, 10.)

Wilson's experience at ALC, and her significantly better interview for the position, which has been well-documented in her interview form, are sufficient for this Court to find that the District had a legitimate, nondiscriminatory reason for promoting Wilson to ALC Principal. Even though Spencer had spent more years in an assistant principal position, all those years had not been spent at ALC, an alternative school that posed unique challenges. The Court finds that ALC has provided a legitimate, nondiscriminatory reason for choosing Wilson for the position over Spencer.

In the third stage of analysis, the burden shifts back to Spencer to show evidence of pretext. *See Burrell,* 482 F.3d at 412; *Rachid v. Jack in the Box,* 376 F.3d 305, 312 (5th Cir. 2004). Spencer attempts to show pretext by arguing that "the job description was manipulated to slot and fill the position for the selected candidate (job number 071515)". The

2010 posting added two qualifications that were not included in the 2004 job positing for the same position: (1) three years of administrative experience instead of two years; and (2) experience working at an alternative school. (Doc. No. 50, Exh. A-4, Exh. F-4.) The Court does not find the change in criteria to be evidence of pretext. First, Spencer met both of these additional qualifications and was therefore not excluded by them. (Spencer Dep, 73:8-10, 78:3-8.) Second, the added criteria were neutral on face, and Spencer has provided no evidence establishing that the criteria excluded African-Americans from interviewing or applying. Indeed, Spencer and three other African-American candidates qualified and interviewed for the position. Additionally Spencer testified that she has no evidence that the committee scored candidates based on race, or that the qualification cut out African-Americans who could have otherwise applied for the job. (Spencer Dep. 74:10-23, 81:22-25—82:1.)

Although Spencer mentions age and sex discrimination claims in her Response, this Court does not consider these allegations since these issues have already been dismissed by the Court. Spencer's Response also continues to rely on other employment decisions that this Court has dismissed[1], arguing that the District did not follow its own posting policy for employment. However, Spencer's only actionable claims, the Summer School position and ALC principal position were both publicly posted. Additionally, Spencer acknowledged that the District had a policy of lateral transfers without posting, a policy that Spencer took advantage of five times during her employment at her request. (Spencer Dep. 51:1-3.) The Court finds that the practice of transfers without posting does not directly relate to the two

---

[1] The employment decisions which have already been considered and dismissed by this Court include: (1) 2004 Assistant Director of Athletics; (2) 2007 Assistant Director of Athletics; (3) 2004 ALC principal; and (4) 2009 Kerr High School assistant principal.

actionable claims before the Court. More generally, there is no evidence that lateral transfers have been applied in a discriminatory fashion.

Therefore, the District has established that there is no genuine issue of material fact that the hiring decisions for the Summer School and ALC principal positions were made for legitimate, nondiscriminatory reasons. The District is entitled to a judgment as a matter of law.

IV. **CONCLUSION**

For the reasons explained above, the District's Motion (Doc. No. 50) is **GRANTED.** The case is **DISMISSED WITH PREJUDICE.**

**IT IS SO ORDERED.**

**SIGNED** at Houston, Texas on this the 27th day of November, 2012.

KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE